## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SORALIZ CARTAGENA and
NELSON FIGUEROA, individually
and on behalf of their child, J.F., a minor,

      Plaintiffs,

v.                            Case No: 8:22-cv-0842-KKM-SPF

MARIA MARTINO-VILLANUEVA,
M.D.; KRYSTA FEE, CNM, WOMEN'S
CARE FLORIDA, LLC, and SUNCOAST
COMMUNITY HEALTH CENTERS, INC.,

      Defendants.
_____

## <u>ORDER</u>

    Soraliz Cartagena and Nelson Figueroa, both individually and on behalf of their

minor child, J.F., sued Suncoast Community Health Centers, Inc., Women's Care Florida,

LLC, Maria Martino-Villanueva, M.D., and Krysta Fee, CNM, in the Circuit Court of

the Tenth Judicial Circuit in and for Polk County, Florida, for medical malpractice and

vicarious liability. These claims involve the medical care that Cartagena and J.F. received

during J.F.'s birth at a Suncoast facility in March 2017. The United States removed the

case, arguing that the exclusive remedy available to Plaintiffs as to three Defendants—

Suncoast, Martino, and Fee—is against the United States under the Federal Tort Claims

Act (FTCA), given that the Secretary of Health and Human Services "deemed" them employees of the Public Health Service (PHS) by operation of the Federally Supported Health Centers Assistance Act (FSHCAA). *See* 42 U.S.C. § 233.

On March 30, 2022, this Court remanded to the Tenth Judicial Circuit because the United States failed to meet § 233(c)'s removal requirements. *See Cartagena v. Martino-Villanueva*, No. 8:21-cv-0547, 2022 WL 950945, at *5 (M.D. Fla. Mar. 30, 2022) (Mizelle, J.). Specifically, the United States initially removed this action *after* the HHS Secretary deemed Suncoast a PHS employee but *before* the Attorney General certified that Fee and Martino were acting within the scope of their PHS employment at the time of the incident. *See Allen v. Christenberry*, 327 F.3d 1290, 1296 (11th Cir. 2003). It was only after Defendants originally removed the action that the Attorney General provided the certification. Section 233(c), however, requires both a deeming by the HHS Secretary and a within-the-scope certification by the Attorney General *prior to* removal. *See Cartagena*, 2022 WL 950945, at *4.

Following remand, the United States again removed this action, (Doc. 2), and again moves to substitute itself in the place of Suncoast, Martino, and Fee, (Doc. 5). Plaintiffs oppose the United States' motion to substitute, (Doc. 19), and again move to remand, (Doc. 18). Plaintiffs also move to stay the case and compel arbitration based on an agreement between Cartagena and the other defendant, Women's Care. (Doc. 17.) The

United States and Women's Care both oppose the motion to stay and compel arbitration, (Doc. 22; Doc. 23), and move to dismiss the action in its entirety, (Doc. 6; Doc. 7). Plaintiffs oppose these motions. (Doc. 20; Doc. 21.)

Plaintiffs also moved to stay the case and conduct limited discovery, arguing that such discovery was necessary to resolve the pending motions. (Doc. 24.) Both Women's Care and the United States opposed the motion. (Doc. 31; Doc. 32.) Following a hearing, the Court granted the discovery motion and limited the scope of discovery to interrogatories and document production related to employment contracts and billing records concerning Martino's independent-contractor agreement with Suncoast during Cartagena's labor and delivery. (Doc. 60.) With the Court's leave, both Plaintiffs and Women's Care filed supplemental briefs following discovery. (Doc. 61; Doc. 62.)

In the light of limited discovery and ripe briefing, the Court denies Plaintiffs' motion to remand and grants the United States' motion to substitute itself as a defendant for Suncoast, Martino, and Fee. An FTCA claim against the United States is Plaintiffs' exclusive remedy for medical negligence against those three defendants under the FSHCAA. The Court also denies Plaintiffs' motion to stay and compel arbitration since the arbitration agreement with Women's Care has no nexus with this dispute, and the United States never agreed to arbitrate the FTCA claim. As to Defendants' dispositive motions, the United States' motion to dismiss is granted because Plaintiffs' claims are

3

barred by the FTCA's statute of limitations. Finally, I decline to exercise supplemental jurisdiction over the remaining state law claim against Women's Care and remand this action to state court.

## I.   BACKGROUND

### A. Statutory Framework

The United States ordinarily enjoys immunity from suit. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). But the federal government can choose to lower its sovereign-immunity shield by "unequivocally express[ing]" a waiver of sovereign immunity. *United States v. King*, 395 U.S. 1, 4 (1969).

The FTCA, otherwise known as the Westfall Act, provides a limited waiver of the United States' sovereign immunity in cases concerning federal employees. 28 U.S.C. § 2679(b)(1); *see Osborn v. Haley*, 549 U.S. 225, 230 (2007). Through it, Congress has waived the federal government's sovereign immunity when its employees are negligent within the scope of their employment. 28 U.S.C. § 1346(b); *see Brownback v. King*, 141 S. Ct. 740, 746 (2021). The FTCA "applies to *employees* of the federal government" and was "not intended to apply to all persons or groups that are in any way associated or receive funding from the federal government." *Del Valle v. Sanchez*, 170 F. Supp. 2d 1254, 1264 (S.D. Fla. 2001) (Gold, J.). Nonetheless, the FSHCAA makes the FTCA the exclusive remedy for medical malpractice against PHS employees, meaning those employees or

4

contractors enjoy individual immunity from suit for conduct performed within the scope of their employment. 42 U.S.C. § 233(a); *see Hui v. Castaneda*, 559 U.S. 799, 806 (2010) ("Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct.").

"The FSHCAA provides authority to remove cases to federal court only in specific and limited circumstances." *Allen*, 327 F.3d at 1293. As an initial matter, the state suit must be against a party that the HHS Secretary has "deemed" to be a PHS employee— meaning the HHS Secretary determined that the party is a federally funded "entity . . . [or] any officer, governing board member, employee, or contractor . . . of such an entity." 42 U.S.C. § 233(g)(1). After such a positive deeming by the HHS Secretary, the Attorney General may remove the action two ways. *See Allen*, 327 F.3d at 1294–95. Under the first route, the United States Attorney General must certify before removal that the defendant was acting within the scope of his employment at the time the incident giving rise to the suit occurred. *See* § 233(c). Under the second route, the Attorney General may appear in the state court action within fifteen days of being notified of the lawsuit and advise that court that the HHS Secretary has deemed the defendant to be a PHS employee. *See* § 233(l)(1). The only other avenue to federal court allows the defendants to remove and to seek a determination of their status from the district court if the Attorney General fails to

5

timely appear in state court. *See* § 233(l)(2); *Allen*, 327 F.3d at 1295 (generally describing the alternate routes to federal court).

After the removal requirements are satisfied, the district court then substitutes the United States as the proper defendant in place of the covered entities and individuals and dismisses the latter from the suit. *See Thomas v. Phoebe Putney Health Sys., Inc*, 972 F.3d 1195, 1198 (11th Cir. 2020) ("The United States is then substituted as the defendant, and the case proceeds against the United States under the FTCA." (citing § 233(a), (c))); *see also Hui*, 559 U.S. at 810 n.9 (noting that § 233(c), unlike § 2679(d), does not detail a "particular mechanism for substituting the United States in federal-court actions").

### B.  Facts

During her pregnancy, Cartagena received prenatal care through Suncoast. (Doc. 1 ¶ 11.) Cartagena also received limited medical services from Women's Care that were not available through Suncoast. (Doc. 18-3; Doc. 18-4.) On August 9, 2016, Cartagena entered into an arbitration agreement with Women's Care. (Doc. 17-1.) The agreement covers "claims for medical malpractice . . . arising out of or in any way relating to the diagnosis, treatment, or care of the patient by the undersigned provider of medical services [(Women's Care)], including any partners, agents, or employees of the provider of medical services." (*Id.* at 1.) Subsequently, between August 2016 and March 2017, Cartagena underwent multiple prenatal tests at a Women's Care facility, including ultrasounds and

nonstress tests (NSTs). (Doc. 18-4.) The supervising physician over these prenatal tests was Jennifer Nixon, M.D, who is not a party to this case. (*Id.*)

On March 6, 2017, Cartagena was admitted to Lakeland Regional Medical Center (a Suncoast facility) for elective induction of labor at around forty-one weeks of gestation. (Doc. 1 ¶ 12.) Defendant Krysta Fee was the midwife during the day shift on March 7. (*Id.* ¶¶ 6, 8, 19.) Fee monitored Cartagena regularly and consulted with Defendant Martino, a licensed physician and the Ob/Gyn in charge of Cartagena's delivery. (*Id.* ¶¶ 3, 4–5.) Martino directly contracted with Suncoast, where she agreed to "provide professional Ob/Gyn physician services for the patients of" Suncoast, including "both hospital and outpatient services." (Doc. 18-2 at 2–3.) Martino also had a separate employment relationship with Women's Care at the time of the delivery. (Doc. 61-3.)

On March 7, at around 2:55 p.m., Martino delivered Cartagena's baby girl, J.F., with the assistance of Fee. (Doc. 1 ¶ 24.) Approximately thirty seconds after delivery, the Natal Intensive Care Unit (NICU) was called due to multiple complications. (*Id.* ¶ 25.) J.F. was resuscitated, intubated, placed on a ventilator, and transported to the NICU's ward; then J.F. was transferred by air to Nemours Children's hospital around 5:35 p.m. (*Id.* ¶ 28.) J.F. was later diagnosed with hypoxic ischemic encephalopathy (HIE), for which she has received medical intervention and therapies. (*Id.* ¶¶ 29–30.) Plaintiffs allege that J.F.'s HIE has caused her permanent injury and significant impairments. (*Id.* ¶ 30.)

Plaintiffs allege medical negligence against both Martino and Fee for breaching their professional medical duties to provide reasonable medical care to Cartagena and J.F. (Doc. 1 ¶¶ 31–42.) In addition to the claims against individual defendants, Plaintiffs allege a claim for vicarious liability against Women's Care because it allegedly employed Martino at the time she engaged in the above medical negligence. (*Id.* ¶¶ 43–44.) Finally, they allege a second count of vicarious liability against Suncoast because it allegedly employed Fee at the time she engaged in the above medical negligence. (*Id.* ¶¶ 45–46.)

## II.   Plaintiffs' Motion to Remand

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They are authorized to hear only those cases falling within "one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016) (quoting *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997)).

A defendant may remove an action initially filed in state court to federal court if the action is one over which the federal court has original jurisdiction. 28 U.S.C. § 1441(a). In removal cases, "the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir.

2001). If a federal court determines that it lacks jurisdiction at any time while a removed action is pending, the case must be remanded to the state court where it originated. *See* 28 U.S.C. § 1447(c). Any doubt about the existence of federal jurisdiction "should be resolved in favor of remand to state court." *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) (cleaned up).

The sole basis for removal in this action is the presence of the United States on behalf of three of the defendants—Suncoast, Martino, and Fee—by operation of the FSHCAA. *See* 42 U.S.C. § 233. Under the FSHCAA, "[i]n order to be covered under the FTCA, an entity, an employee of the entity, or a contractor of the entity seeking coverage must be deemed an employee of PHS." *Allen*, 327 F.3d at 1294 (citing 42 U.S.C. § 233(g)(1)(A)). Section 233(b) requires the Attorney General to "defend any civil action" brought in court against any officer or employee of PHS acting in the scope of his employment. 42 U.S.C. § 233(b). And "[u]pon a certification by the Attorney General that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court *shall* be removed without bond at any time before trial by the Attorney General." *Id.* § 233(c) (emphasis added).

Plaintiffs' second remand motion (like the first) wrongly conflates the Westfall Act with the FSHCAA. (Doc. 18 at 5–14.) Plaintiffs cite to *United States v. Orleans*, 425 U.S.

9

807 (1976), *Tisdale v. United States*, 62 F.3d 1367, 1371 (11th Cir. 1995), and *Del Valle v. Sanchez*, 170 F. Supp. 2d 1254 (S.D. Fla. 2001), for support. (*Id.* at 7.) But in each of these cases, the courts were analyzing whether an individual is a federal employee under the Westfall Act—which applies only to federal employees, not contractors. *See* 28 U.S.C. § 2679(b). To perform the Westfall Act analysis, courts use the control test. *See, e.g.,* *Orleans*, 425 U.S. at 814–15; *Tisdale*, 62 F.3d at 1371; *Woodruff v. Covington*, 389 F.3d 1117, 1126–28 (10th Cir. 2004). But in the FSHCAA context (here), the HHS Secretary's determination that an employee or contractor of an entity is an employee of PHS "shall be final and binding upon the Secretary and the Attorney General and other parties to any civil action or proceeding." § 233(g)(1)(F). In other words, when an entity or an individual is deemed to be a PHS employee by the HHS Secretary, the parties cannot challenge that determination. *Id.*; *see Brown*, 971 F. Supp. at 521; *see also Alexander*, 484 F.3d at 897. Although a court must, at times, analyze both the Westfall Act and the FSHCAA, *see, e.g.,* *Del Valle*, 170 F. Supp. 2d at 1264 (defendant physicians argued they were entitled to FTCA coverage under both the Westfall Act and the FSHCAA), a court applies the control test when conducting only the Westfall Act analysis. *See id.* at 1264–68. Therefore, to the extent Plaintiffs' remand arguments invite application of the control test, the Court declines to do so.

As to the Plaintiffs' specific arguments, they contend that it was improper for the United States to remove this action a second time because there are no new or different grounds for removal. (Doc. 18 at 14–21.) Not so. Previously, this Court lacked subject matter jurisdiction over this action because the Attorney General certified *after* removal instead of before. *See Cartagena*, 2021 WL 950945, at *3–5 ( " '*Upon* a certification' by the Attorney General 'any such civil action or proceeding commenced in a State court *shall* be removed . . . by the Attorney General to the district court of the United States.' " (quoting § 233(c))). Now, the United States removed in accord with the statutory procedure—namely, after the Attorney General certified . *See Sibilia v. Makita Corp.*, 782 F. Supp. 2d 1329, 1331 (M.D. Fla. 2010) (Moody, J.) (concluding second removal was proper where it was supported by a different factual basis). With both a pre-removal deeming by the HHS Secretary, (Doc. 5-1), and a pre-removal within-the-scope certification by the Attorney General, (Doc. 1-3), the United States has met § 233(c)'s statutory removal requirements.

Plaintiffs next argue that the HHS Secretary only deemed Suncoast for FTCA coverage, and not Fee and Martino, thus the FSHCAA does not cover the latter two. (Doc. 42 at 3–5.) This argument also fails.

Beginning with FSHCAA's text, § 233(g)(1)(A) provides that "[t]he remedy against the United States for a[] [deemed] entity . . . and any officer, governing board

member, employee, *or* contractor . . . of such an entity" shall be exclusively against the United States under the FTCA. (emphasis added). Put simply, where the HHS Secretary has deemed an entity an employee of PHS, both the entity, its employees, and its qualifying[1] contractors are also covered by the FTCA. *See, e.g., Dedrick v. Youngblood*, 200 F.3d 744, 745 (11th Cir. 2000) ("The [FSHCAA] essentially makes the [United States] government the medical malpractice insurer for qualifying . . . health centers, their officers, employees, and contractors, allowing these 'deemed' health centers to forgo obtaining private malpractice insurance."); *Agyin v. Razmzan*, 986 F.3d 168, 172 (2d. Cir. 2021) ("To obtain deemed federal status [under § 233], [the entity] was required to submit an application on behalf of itself *and* its employees each year."); *Rosenblatt v. St. John's Episcopal Hosp.*, No. 11-cv-1106, 2012 WL 294518, at *5 (E.D.N.Y. Jan. 31, 2012) ("As a result [of the entity being deemed an employee of the PHS], both the [entity] and its employees are immune from medical malpractice claims, and the FTCA is the exclusive remedy for these lawsuits."); *Helms ex rel. Taylor v. Atrium Health Care & Rehab. Ctr. of Cahokia, LLC*, No. 10-547-GPM 2010 WL 3937606, at *3 (S.D. Ill. Oct. 5, 2010) ("Assuming that all of [§ 233's] conditions . . . are met, a public health center *and* its

---

[1] Plaintiffs do not argue that Martino is not a qualifying contractor within the statutory definition. *See* 42 U.S.C. § 233(g)(5). But any such argument would fail regardless because Martino contracted directly with Suncoast. (Doc. 18-2). *Cf. Dedrick v. Youngblood*, 200 F.3d 744, 746 (11th Cir. 2000) (holding that there is no federal liability for medical services of a physician who treated patients while employed by legal entity that contracted with federally funded entity because there was no direct contractual relationship between the physician and the federally funded entity); *accord Allen*, 327 F.3d at 1292 n.1.

employees and contractors are deemed to be federal employees with the power to remove from state court to federal court suits brought against them for alleged negligence while acting within the scope of their employment." (emphasis added)).

The HHS Secretary's three earlier deeming notices as to Suncoast—prior to the March 8, 2021 declaration related to this action—clarify both (1) that beginning January 1, 2016, Suncoast was deemed to be an employee of the PHS under the FSHCAA and (2) that "[c]overage extends to deemed entities *and* their . . . contractors who are licensed or certified individual health care practitioners," as provided for in § 233(g)(1)(A). (Doc. 5-1 at 3, 5, 9 (emphasis added).)

The HHS FTCA Health Policy Manual also supports this reading of the statute. (Doc. 18-1.) The excerpt from the HHS manual that Plaintiffs attach to the remand motion includes a section labeled "Covered Individuals," which interprets the FSHCAA in the same manner as explained above:

> FSHCAA extends FTCA liability protection for medical malpractice to any eligible officer, governing board member, employee, or qualified contractor of a covered entity . . . . For the purposes of the FTCA Policy Manual, the term covered individuals applies to all such individuals. *FTCA coverage is afforded to covered individuals by virtue of their working relationship with the covered entity.* Covered individuals are ordinarily deemed to be Public Health Service (PHS) employees *by operation of a deeming determination regarding the covered entity,* combined with proof of satisfaction of the permissible relationship under FSHCAA, such as officer, governing board member, health center employee, or qualified contractor.

13

(*Id.* (emphasis added).).). To be clear, the HHS's policy manual lacks the force and effect of law because it was not issued through the notice-and-comment process. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96–97 (2015); *see also Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995) (guidance documents are "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers" but those documents "do not have the force and effect of law and are not accorded that weight in the adjudicatory process"). But the manual follows the statute's plain text, and Plaintiffs' citation to it for their contrary interpretation is unavailing. Based on the statute's plain text and the clear language in Suncoast's past deeming notices, covered individuals (including qualified contractors) are ordinarily "deemed" to be PHS employees "*by operation* of a deeming determination regarding the covered entity." (Doc. 18-1 (emphasis added).)

Finally, Plaintiffs argue that, while the HHS Secretary's deeming may bind the parties, this Court may review the Attorney General's within-the-scope certification and should reject the certification as to Martino. (Doc. 18 at 8–12.) True, § 233(c) indicates that courts may—in certain circumstances—be called upon to review the certification. *See Thomas*, 972 F.3d at 1198 (explaining that if "the 'district court determine[s] on a hearing on a motion to remand' that a remedy against the United States under § 233(a) is not available—for example, because the defendant was not acting within the scope of employment—'the case shall be remanded to the State Court'" (quoting § 233(c))

14

(alterations in original)). But Plaintiffs bear "the burden of coming forward with specific facts" to rebut the certification's within-the-scope determination. *Rendon v. United States*, 91 F. Supp. 2d 817, 819 (E.D. Pa. 2000) (quoting *Schrob v. Catterson*, 967 F.2d 929, 936 (3d Cir. 1992)).

To allow for Plaintiffs to meet their burden, the Court granted jurisdictional discovery and supplemental briefing. (*See* Doc. 60.) But Plaintiffs still fail to point to specific facts that rebut the Attorney General's within-the-scope determination as to Martino.

Quite the opposite, the record supports the Attorney General's certification of Martino. No one disputes that Martino had separate professional relationships with both Suncoast (as an independent contractor) and Women's Care (as an employee) at the time of the delivery. (Doc. 61-3.) Neither is it disputed that the medical care Martino administered in connection with Cartagena's labor and the delivery of J.F.—the conduct that forms the basis for this medical negligence lawsuit—occurred at a Suncoast facility. (Doc. 1 ¶ 12.) Further, Martino's independent contractor agreement with Suncoast expressly covers the medical care she administered during Cartagena's labor and J.F.'s delivery, namely supervision of Fee and emergency Ob/Gyn services. (Doc. 18-2.) The agreement states that Martino "agrees to provide professional Ob/Gyn services for"

Suncoast patients by "supervis[ing]" other Suncoast providers and "provid[ing] direct patient care," including Ob/Gyn emergency services. (*Id.* at 2–3, 6.)

Far from meeting their burden of pointing to specific facts rebutting the Attorney General's certification, Plaintiffs fail to point to any evidence that Martino had a relationship with Cartagena vis-à-vis Women's Care at the time of delivery. Even assuming that Plaintiffs are correct that Suncoast's billing records related to Cartagena's labor and delivery do not include billing for Martino's services, (Doc. 61 at 2–3), Women's Care's billing records and Suncoast's and Martino's interrogatory answers make it clear that Women's Care never compensated Martino for these services, (Doc. 23-2; Doc. 61-5; Doc. 61-6). The evidence indicates that Cartagena received certain prenatal medical services (e.g., ultrasounds, etc.) at Women's Care, but these services were performed by a different physician who is not a party to this case. (Doc. 18-4.) Plaintiffs repeatedly cite to one medical record that lists Martino as the referring physician for a urine pregnancy test and lists the appointment facility as "SCHC Women's Care of Lakeland." (Doc. 18-3.) But, during a hearing, (Doc. 59), the parties clarified that SCHC Women's Care of Lakeland is a Suncoast facility and is not affiliated with Defendant Women's Care. The medical record supports this view, which includes the Suncoast logo in the top left corner. (Doc. 18-3.)

Because Plaintiffs have failed to come "forward with specific facts" to rebut the Attorney General's certification that Martino was acting within-the-scope of her employment, *Rendon*, 91 F. Supp. at 819, and for the other reasons discussed above, the Plaintiffs' motion to remand is denied because the United States properly removed the case under § 233.

## III.   The United States' Motion to Substitute

Given that the HHS Secretary deemed Suncoast (and by extension Martino and Fee) employees of the PHS, (Doc. 5-1), and the Attorney General certified that each acted within the scope of their federal employment, (Doc. 1-3), the FTCA is the exclusive remedy for any claims against them and the United States is the proper defendant. *See* 42 U.S.C. § 233(a), (c), (g); *id.* § 233(c) ("Upon a certification by the Attorney General that the defendant was acting in the scope of his employment[,] . . . any such civil action or proceeding commenced in State court shall be removed . . . and the proceeding deemed a tort action brought against the United States."); *see also, e.g.*, *Bender v. Burich*, No. 8-20-cv-149, 2020 WL 1862600, at *1–2 (M.D. Fla. Apr. 14, 2020) (Barber, J.) (dismissing action as to individual defendant and substituting the United States in her place); *Sepulveda v. Family Health Ctr. of S.W. Fla., Inc.*, No. 2:05-cv-231, 2005 WL 8159514, at *1–2 (M.D. Fla. Oct. 19, 2005) (Covington, J.) (dismissing action as to individual defendant and health center and substituting the United States in their place).

In their opposition to the United States' motion to substitute, Plaintiffs assert that the United States is not permitted to substitute for non-individual entities like Suncoast. (Doc. 19 at 2–3, 8.) But the FHSCAA explicitly contemplates extending FTCA coverage to federally funded *entities* under § 233(g)(4). *Compare Burich*, 2020 WL 1862600, at *1– 2; *Sepulveda*, 2005 WL 8159514, at *1–2 (substituting the United States for covered entities and individuals under the FSHCAA), *with Creel v. United* States, 598 F.3d 210, 211–15 (5th Cir. 2010); *Woodruff v. Covington*, 389 F.3d 1117, 1125 (10th Cir. 2004) (neither dealing with an immunity claim under FSHCAA, but rather dealing with an immunity claim under the Westfall Act, a separate statutory framework). Therefore, the Court grants the motion to substitute, dismisses Suncoast, Martino, and Fee from the action, and substitutes the United States in their place.

## IV.   Plaintiffs' Motion to Stay and Compel Arbitration

The Federal Arbitration Act (FAA) requires courts to "enforce arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal quotation omitted). Since arbitration clauses are based in contract, courts generally apply state contract law to determine the scope and enforceability of an arbitration clause, *see Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)), but "state law is preempted to the extent it 'stands as an obstacle to the accomplishment and execution of

the full purposes and objectives' of the FAA," *id.* (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011)). The parties do not raise any FAA preemption arguments here, so this Court evaluates the scope and enforceability of the arbitration agreement under Florida law.

Under Florida law, there are three elements to consider in determining whether to compel arbitration: (1) whether a valid arbitration provision exists, (2) whether there is an arbitrable issue, and (3) whether the right to arbitrate has been waived. *See Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999). "[E]ven in contracts containing broad arbitration provisions, the determination of whether a particular claim must be submitted to arbitration necessarily depends on the existence of some nexus between the dispute and the contract containing the arbitration clause." *Morales v. Perez*, 952 So. 2d 605, 608 (Fla. 3d. DCA 2007) (quotation and emphasis omitted) (noting that the "nexus test" applies to both narrow and broad arbitration provisions). "[A] dispute is subject to arbitration when, at a minimum, the resolution of the issue requires a reference to or construction of a portion of the contract." *Id.* (quoting *Seifert*, 750 So. 2d at 639).

Florida courts have occasionally held that a non-signatory of an arbitration agreement may be bound to arbitrate where that non-signer is a third-party beneficiary. *See Kong v. Allied Pro. Ins. Co.*, 750 F.3d 1295, 1302 (11th Cir. 2014). But "[c]ritically, the third-party beneficiary doctrine enables a non-contracting party to enforce a contract

against a contracting party—not the other way around." *Torres v. Starbucks Corp.*, No. 8:20-cv-1311, 2021 WL 964219, at *5 (M.D. Fla. Mar. 15, 2021) (Honeywell, J.) (quoting *Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So. 3d 146, 149 (Fla. 2016)).

Plaintiffs argue that an arbitration provision in the agreement that Cartagena executed with Women's Care on August 9, 2016, requires the case to be stayed to allow for arbitration. (Doc. 17.) Under a section heading entitled "Arbitration Agreement for Claims Arising Out of or Related to Medical Care and Treatment" and a sub-heading entitled "Agreement to Arbitrate Claims Regarding Future Care & Treatment," the provision requires the parties to arbitrate any medical malpractice claim "*arising out of or in any way relating to* the diagnosis, treatment, or care of the patient *by the undersigned provider of medical services*, including any partners, agents, or employees of the provider of medical services." (Doc. 17-1 at 2 (emphasis added).)

Plaintiffs argue that "once this Court finds that an arbitration agreement exists for the claims in this case, the Arbitration Agreement must be enforced and all of the claims against all Defendants ordered to arbitration." (Doc. 17 at 4.) Further, Plaintiffs argue that an almost identical arbitration agreement involving Women's Care was enforced several years ago in Hillsborough County Circuit Court, so, presumably, this one should be enforced as well. (*Id.* at 6.)

20

I disagree. Even after limited discovery, Plaintiffs fail to show any "nexus" between the arbitration provision in Cartagena's agreement with Women's Care, which covers claims arising out of medical care performed by the staff at Women's Care (here prenatal ultrasounds and NSTs performed under the supervision of a non-party physician) and Plaintiffs' claims for medical negligence involving medical care that took place at a Suncoast facility during the labor and delivery of J.F. The "resolution of" the medical negligence and vicarious liability claims here do not "require[] a reference to or construction of" the arbitration agreement between Cartagena and Women's Care. *Morales*, 952 So. 2d at 608 (quoting *Seifert*, 750 So. 2d at 639). Further, the medical care that forms the basis of this dispute (performed by Martino in her role as an Ob/Gyn at the Suncoast facility) falls directly within Martino's independent contractor agreement with Suncoast. (Doc. 18-2.) Acting under that agreement, Martino was clearly "provid[ing] professional Ob/Gyn physician services" for Cartagena, a "patient[] of" Suncoast during the events in question. (*Id.* at 1.)

For similar reasons that Plaintiffs' motion to remand was denied, there is nothing to suggest that Martino was acting on behalf of Women's Care—i.e., wearing her Women's Care "hat"—when she provided the medical care that forms the basis for the medical malpractice claims here. Thus, Plaintiffs' claims premised on Martino's conduct cannot fall

within the Plaintiffs' arbitration agreement with Women's Care. The motion to stay and compel is therefore denied as to Women's Care.

As to the United States—a non-signatory to the arbitration agreement at issue—the motion to stay and compel is also denied. The United States never agreed to arbitration, so the general rule applies that the United States cannot be compelled to arbitrate. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). The narrow third-party beneficiary doctrine does not help Plaintiffs either for two reasons. First, the United States never received any benefit from Cartagena's agreement with Women's Care. *Cf. Pulte Home Corp. v. Bay At Cypress Creek Homeowners' Ass'n, Inc.*, 118 So. 3d 957, 958 (Fla. 2d DCA 2013) (nonsignatory homeowners compelled to arbitrate claim based on preexisting contract between builder and homeowners' association). Second, the United States, as the non-contracting party, is not attempting to enforce the contract against a contracting party, so the third-party beneficiary doctrine does not apply. *See Starbucks*, 2021 WL 964219, at *5.

Nor is the United States obligated to arbitrate because it is stepping in as a successor on behalf of Martino. Martino, while not a direct party to the arbitration agreement between Women's Care and Cartagena, could trigger arbitration if her alleged conduct occurred within the scope of her employment for Women's Care. But for reasons discussed

already, Martino was acting as an independent contractor for Suncoast during Cartagena's

labor and J.F.'s delivery, not on behalf of Women's Care. Thus, the United States does not

stand in a worse position than Martino when it is substituted in as the defendant in her

place. There is simply no basis to stay the case and compel the United States to arbitrate.

Therefore, the Plaintiffs' motion to stay and compel arbitration is denied.

**V.    Defendants' Motions to Dismiss**

    **1.   Plaintiffs' Claims Against the United States Must Be Dismissed Because They Either Failed to Exhaust Their Administrative Remedies or the Claims Are Barred by the FTCA's Statute of Limitations**

"A federal court does not have 'jurisdiction over a suit under the FTCA unless the

claimant first files an administrative claim with the appropriate agency . . . within two years

from the time the claim accrues . . . .'" *Turner ex rel. Turner v. United States*, 514 F.3d

1194, 1200 (11th Cir. 2008) (quoting *Dalrymple v. United States*, 460 F.3d 1318, 1324

(11th Cir. 2006)) (alterations in original). Because "'[t]he FTCA bars claimants from

bringing suit in federal court until they have exhausted their administrative remedies,' the

district court lacks subject matter jurisdiction over prematurely filed suits." *Id.* (quoting

*McNeil v. United States*, 508 U.S. 106, 113 (1993)) (alteration in original); *see Burnam v.*

*United States*, No. 8:21-cv-772, 2021 WL 5084181, at *2 (M.D. Fla. Nov. 2, 2021)

(Honeywell, J.) (concluding the court was "without jurisdiction to consider whether the

complaint" stated an FTCA claim where the plaintiff did not "go through the requisite

administrative process by submitting a claim or otherwise exhausting his administrative remedies"). Further, "in multiple claimant actions under the FTCA[,] each claimant must individually satisfy the jurisdictional prerequisite of filing a proper claim." *Dalrymple*, 460 F.3d at 1325 (internal quotations omitted).

To begin, Figueroa failed to exhaust his administrative remedies because, unlike Cartagena, he did not file a Standard Form 95 with HHS. Because Figueroa failed to "individually satisfy the jurisdictional prerequisite of filing a proper claim," *id.*, the Court lacks subject matter jurisdiction over Figueroa's FTCA claim. Cartagena, however, did file a Standard Form 95, and thus, properly exhausted her administrative remedies.

Even so, the FTCA's statute of limitations bars any remaining part of Plaintiffs' FTCA claim. Under the FTCA, "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b); *see United States v. Kubrick*, 444 U.S. 111, 117 (1979) ("[This limitations provision] is the balance struck by Congress in the context of tort claims against the government; and we are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims.").

J.F. was born on March 7, 2017—there is no dispute that this event started the statute's two-year clock. *See Price v. United States*, 775 F.2d 1491, 1494 (11th Cir. 1985) (determining that the clock starts when "the plaintiff is, or in the exercise of reasonable

diligence should be, aware of both [his or] her injury and its connection with some act of the defendant"). Cartagena filed a Standard Form 95 with HHS on April 20, 2020, well over three years later. (Doc. 6-1.); *see* 28 C.F.R. § 14.2 ("For purposes of the provisions of 28 U.S.C. § 2401(b), . . . a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representation, an executed Standard Form 95."). The question here becomes whether anything paused the clock after it started. If not, Plaintiffs' FTCA claim against the United States is barred.

Plaintiffs argue that Florida law tolled the FTCA's statute of limitations—specifically, the Birth-Related Neurological Injury Compensation Plan. (Doc. 20 at 5–12); *see* § 766.303(1) (exclusive remedy provision of the Plan). The Plan is a system designed to "provid[e] compensation, irrespective of fault, for birth-related neurological injury claims," which also includes a tolling provision that Plaintiffs contend applies here. *Maradiaga v. United States*, 679 F.3d 1286, 1288 (11th Cir. 2012). Specifically, the Plan's statute of limitations "shall be tolled" by the filing of a claim with the association that administers the Plan "and the time such claim is pending or is on appeal shall not be computed as part of the period within which such civil action may be brought." *See* §§ 766.305–06, Fla. Stat.

State law generally—and specifically the Plan—does not affect the FTCA's statute of limitations. *See Ramos v. United States Dep't of Health & Human Servs.*, 429 F. App'x

947, 952 (11th Cir. 2011) (affirming the district court's dismissal on FTCA statute of limitations grounds and reasoning that "the limitations period is set by the FTCA" not by state law). Courts look to state law only when Congress fails to establish a federal statute of limitations. But "[f]or claims brought under the FTCA, Congress has expressly stated the applicable limitations period." *Phillips v. United States*, 260 F.3d 1316, 1318 (11th Cir. 2001). That period remains two years after the FTCA claim accrues. *See* 28 U.S.C. § 2401(b). Plaintiffs do not dispute that the claim under the FTCA accrued when J.F. was born on March 7, 2017, since they were aware of her injury and the Defendants' involvement in causing it at that time. (Doc. 20 at 2, 5–8); *see Motta ex rel. A.M. v. United States*, 717 F.3d 840, 844 (11th Cir. 2013) (quotation omitted). Cartagena filed a Standard Form 95 with HHS on April 20, 2020, over a year outside the statute of limitations.

Plaintiffs alternatively argue for equitable tolling because they argue there is no way they could have known about the deemed status of Suncoast or Martino. (Doc. 20 at 13–16.) Plaintiffs have also not shown entitlement to this "extraordinary remedy." *See Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006); *United States v. Wong*, 575 U.S. 402, 420 (2015) (allowing FTCA claims to be subject to equitable tolling). Such tolling is "appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Motta ex rel. A.M.*, 717 F.3d at 846 (quotation omitted). "It is also appropriate if in the exercise of due diligence,

the claimant nonetheless files 'a defective pleading during the statutory period.'" *Id.* (quotation omitted).

Here, Plaintiffs could have accessed HHS's publicly available, searchable database of federally funded health centers and determined Suncoast's status anytime from March 2017 until the statute of limitations expired two years later. Suncoast was not obligated to inform Plaintiffs of its funding status until it received a notice of intent to sue, which it promptly did upon receipt of the notice in April 2020. *See id.*; *Ramos*, 429 F. App'x at 951–52. Nor did Plaintiffs file a "defective pleading during the statutory period." *Motta*, 717 F.3d at 846. Thus, they are not entitled to equitable tolling.

Therefore, the Court grants the United States' motion to dismiss with prejudice given that amendment would be futile under these circumstances. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999); *see also Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

### 2. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiffs' Pendant Claim for Vicarious Liability Against Women's Care

This Court "may decline to exercise supplemental jurisdiction" where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see Palmer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1569 (11th Cir. 1994) (noting that district courts have discretion to decline to exercise supplemental jurisdiction after the dismissal of the underlying federal claims).

27

Because the Court has already dismissed the FTCA claims against the United States, the only remaining claim in this action is Plaintiffs' vicarious liability claim against Women's Care. In the absence of any remaining basis for federal jurisdiction, the Court elects not to exercise supplemental jurisdiction over the remaining state law claim against Women's Care and remands the action—which now includes only the single vicarious-liability claim against Women's Care—to state court for further proceedings.

## VI.    CONCLUSION

The Court denies Plaintiffs' motion to remand because the FSHCAA required the United States to remove this action and move to substitute itself as a defendant. The HHS Secretary deemed Suncoast (and by extension Martino and Fee) employees of PHS, and the Attorney General certified that they were acting within the scope of their federal employment during the events in question. Therefore, the FTCA provides the exclusive remedy for Plaintiffs' medical negligence claims against the United States. As a corollary, the Court grants the United States motion to substitute itself as a defendant and dismisses Suncoast, Martino, and Fee from the action.

Next, the Court denies Plaintiffs' motion to stay and compel arbitration because the arbitration agreement in question has no nexus with the instant dispute and the United States never agreed to arbitrate the FTCA claim.

As to Defendants' dispositive motions, the United States motion to dismiss is granted because Figueroa failed to exhaust and because the FTCA's statute of limitations bars relief and Plaintiffs cannot establish tolling. Because there is no remaining basis for federal jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state law claim against Women's Care and remands the action to state court for consideration of the remaining claim.

Accordingly, the following is **ORDERED:**

1. Plaintiffs' Motion to Remand (Doc. 18) is **DENIED**.

2. Defendant's Motion to Substitute (Doc. 5) is **GRANTED**. The Clerk is directed to dismiss Defendants Suncoast, Martino, and Fee from the action and substitute in the United States as a defendant in their place.

3. Plaintiffs' Motion to Stay and Compel Arbitration (Doc. 17) is **DENIED**.

4. Defendant United States' Motion to Dismiss (Doc. 6) is **GRANTED with prejudice**.

5. The Clerk is next directed to **TERMINATE** any pending motions and deadlines; to **ENTER JUDGMENT** in favor of the United States; and to **REMAND** this action to the Circuit Court of the Tenth Judicial Circuit, in and for Polk County, Florida, and to transmit a certified copy of this order

to the clerk of that court for consideration of Plaintiffs' single remaining claim against Women's Care for vicarious liability.

**ORDERED** in Tampa, Florida, on August 4, 2022.

Kathryn Kimball Mizelle
United States District Judge